CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 19, 2024
LAURA A. AUSTIN, CLERK
BY:      /s/T. Taylor
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE  DIVISION

| | | |
|---|---|---|
| **BRIAN L. TUCKER,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:23CV00153 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |

*Brian L. Tucker, Pro Se Petitioner; Jason D. Reed, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner, Brian L. Tucker, a Virginia inmate proceeding pro se, in his Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, contends that his confinement pursuant to a judgment entered by the Circuit Court of Halifax County on November 6, 2018, violates the Constitution.   Tucker was convicted and sentenced for possession with intent to distribute cocaine, third offense, possession of a firearm while possessing cocaine with intent to distribute, possession with intent to distribute oxycodone, and possession with intent to distribute alprazolam.   Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

I.   BACKGROUND.

The Court of Appeals of Virginia found the following facts when ruling on Tucker's direct appeal regarding the challenged Judgment, viewing the evidence in the light most favorable to the Commonwealth:

> [O]n November 26, 2016, Deputy T.W. Bush of the Halifax County Sheriff's Office met with Kayla Miller concerning an allegation that [Tucker] had assaulted her and taken her rental car without permission. Based on information Miller provided regarding [Tucker], Deputy Bush obtained a search warrant for [Tucker's] residence on Jones Store Lane in Halifax County and executed the warrant at 2:36 p.m.  No one answered when Deputy Bush and Special Agent R.B. George of the Virginia State Police knocked on the locked door.  Special Agent George kicked in the door. No one was inside the house, but there was a pit bull tied to a railing outside the back door and another pit bull tied to a tree in the backyard.
>
> Once inside the house, Deputy Bush found a twelve-gauge shotgun shell under a sofa cushion in the living room and a loaded twelve-gauge shotgun in a bedroom closet.  In the same bedroom, Deputy Bush saw [Tucker's] 2004 high school diploma and credit cards, bills, and prescription pill bottles in [Tucker's] name.  Deputy Bush found ten .380 caliber bullets and men's underwear and socks in a dresser drawer.  In a black bag under the unmade bed, Deputy Bush discovered a wallet with [Tucker's] social security card, a North Carolina identification card, and a current license to operate a forklift. The bag also held $3,140 in cash in various denominations, including 106 twenty-dollar bills.
>
> In another room, Deputy Bush found men's and women's clothing and shoes, an envelope with [Tucker's] name and photo on the front and a cell phone inside, ammunition, and a glass jar with three checks payable to [Tucker] for $100 each.  The checks were dated October 11, 2016, October 12, 2016, and October 30, 2016.  In a dresser drawer, Deputy Bush discovered a baggie with white and yellow pills, which were determined to be a Schedule VI drug, and a baggie with

pink-orange pills, which were identified as alprazolam, a Schedule IV drug.  Deputy Bush saw shampoo, soap, and toothpaste in the bathroom.

A table in the kitchen had been turned on its side.  Scales, cut straws, a silver spoon, and a used syringe were found on the floor next to the table.  Laboratory analysis identified cocaine residue on the scales and straws and oxycodone residue on the spoon.  Additionally, there were two boxes of sandwich bags and some of the bags had torn corners.  Finally, no smoking devices were found in the house.

In the gas cap area of the unlocked 1996 Ford Explorer partially sitting on blocks in the front yard, Deputy Bush located several small bags of crack cocaine.  Miller had told Deputy Bush that [Tucker] usually put drugs to be picked up by other persons in the gas cap of vehicles.  The Explorer was registered to Melissa Diana Tucker.

Deputy Blake Jones of the Halifax County Sheriff's Office stopped [Tucker] about one mile from [Tucker's] house and arrested him for assaulting Miller and taking her car.  [Tucker] said that he took the car to get away from Miller.  He told Deputy Jones that they had argued about another woman sending him a text message and that he had refused to buy Miller more powder cocaine.  [Tucker] said that he had used cocaine two days before.

[Tucker] told the magistrate that the house that Deputy Bush had searched was his and that sometimes his mother came there, but the gun and ammunition were not his.  Later [Tucker] said that the house was not his residence. He also told the magistrate that he did "side work" for Joe Bailey.[1]

Br. Supp. Mot. Dismiss Ex. 2 (Resp.) Ex. 2, 60–62, ECF No. 13-2 (footnotes omitted).[2]  Evidence at trial also showed that Tucker "made five telephone calls from

---

[1]  Photos of the checks found in the house indicated that they were written to Brian Tucker from Joseph Bailey.  Resp. Ex. 5, at 53–55, ECF No. 13-5.

[2]  For the sake of consistency, citations to the record will refer to the document numbers and page numbers assigned to documents by the court's electronic filing system.

the jail in June 2017.  During the calls he discussed, mostly in veiled language, the possibility of other people claiming possession of the house, drugs, and firearm." *Id.* at 66.  "During one phone call [Tucker] contacted a friend who stated, 'I'm trying to get her to do the affidavit.'  [Tucker] advised his friend to 'tell her I got someone that's going to claim everything for me . . . . I just need her to vouch and . . . be like it ain't [mine].'  *Id.*

The trial court, sitting without a jury, convicted Tucker of the four counts listed above — three felonies and a misdemeanor.[3]  In a Sentencing Order dated November 6, 2018, the court sentenced Tucker to a total of fifty years and six months, with twenty years suspended, leaving thirty years and six months of prison time to serve.  Resp. Ex. 1, ECF No. 13-1 (regarding CR17-311-00, CR17-311-01, CR17-311-02, and CR17-311-04).

Tucker's appeal to the Court of Appeals of Virginia, Record No. 1923-18-2, asserted that the trial judge should have recused herself and that the evidence was insufficient to prove that Tucker constructively possessed the drugs and the firearm on which his convictions rested.  The court of appeals found that Tucker failed to prove grounds for recusal and that the evidence was sufficient and affirmed the trial court's rulings.  Resp. Ex. 2, ECF No. 13-2.  Tucker's next level appeal to the

---

[3]  Earlier, in a separate case, a jury convicted Tucker of possession of a firearm as a convicted felon.  That count is not addressed in this Opinion.

Supreme Court of Virginia was also unsuccessful, Record No. 191738. Resp. Ex. 3, at 53, ECF No. 13-3.

On August 27, 2021, Tucker filed a habeas corpus petition in the Supreme Court of Virginia, Record No. 210842. Liberally construed, he challenged his detention on the following grounds:

I.   The Commonwealth failed to establish that Tucker constructively possessed the illegal substances or the firearm at issue;

II.  Tucker was denied his right to confront witnesses, and counsel were ineffective for failing to argue these claims at trial and on appeal;

III. Tucker's conviction violated double jeopardy, and counsel were ineffective for failing to argue this claim at trial and on appeal;

IV.  Tucker's counsel provided ineffective assistance at trial and on appeal; and

V.   Virginia's direct appeal scheme is unconstitutional and deprived Tucker of due process and the right to counsel.

Resp. Ex. 4, at 21, ECF No. 13-4.[4] The Supreme Court of Virginia denied Tucker's petition by Order dated December 2, 2022. *Id.* at 189–204.

Tucker timely filed his federal habeas petition. Liberally construed, he alleges the following grounds for relief:

---

[4] While Tucker designates his state habeas claims in various ways in his submissions, I will refer to them here using the Roman numerals assigned to his claims by the Supreme Court of Virginia in its ruling.

1. The Commonwealth provided insufficient evidence that Tucker constructively possessed the illegal substances or firearm at issue in his charged offenses. In support of this contention, Tucker complains that (a) no witnesses were sworn at trial, (b) the statements of Kaila Miller were inadmissible because she did not testify, (c) the certificate of analysis of the seized substances was inadmissible because the analyst did not testify, and (d) the evidence was insufficient to prove he directly or constructively possessed any of the contraband seized from the house;

2. Tucker was denied his right to confront witnesses because: (a) statements by Kaila Miller came into evidence through testimony by Deputy Bush, not Miller; (b) the author of the certificate of analysis did not testify, and (c) recordings of jail phone calls purportedly between Tucker and third parties were admitted without any opportunity for cross-examination of the custodians of the recordings or the third party callers;

3. Tucker's conviction for violating Virginia Code Ann. § 18.2-308.4(C), which creates a separate felony for possessing a firearm while possessing drugs with the intent to distribute, violated double jeopardy because Tucker was also convicted of possessing drugs with the intent to distribute those drugs, Virginia Code Ann. § 18.2-248(C) for the same alleged act; and

4. Tucker's trial counsel provided ineffective assistance by: (a) failing to call witnesses; (b) eliciting hearsay statements of Kaila Miller; (c) failing to raise Tucker's Confrontation Clause issues from Claim 2; (d) failing to raise his Double Jeopardy issues from Claim 3; and (e) failing to challenge the sufficiency of the evidence of constructive possession.

Pet. 4–10, ECF No. 1.

The respondent has filed a Motion to Dismiss, and Tucker has responded, making the matter ripe for disposition.  I have also reviewed the state court records submitted by the respondent and the state courts.[5]

## II.  DISCUSSION.

### A.  Exhaustion and Procedural Default.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Absent a valid excuse, a state prisoner must exhaust his remedies in the state courts before seeking habeas relief in federal court.  28 U.S.C. § 2254(b)(1)(A).  A petitioner satisfies the exhaustion requirement when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court."  *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993).[6]  In other words, for proper exhaustion of state court remedies, the petitioner must have presented the same arguments and factual support

---

[5]  The records the respondent initially submitted with the Motion to Dismiss did not include any audio recordings or video footage, although the Supreme Court of Virginia refers to the video footage in its habeas Order, Resp. Ex. 4, at 202–03, ECF No. 13-4.  Since then, counsel for the respondent has submitted a disc of audio clips and several discs of video footage to the court.

[6]  I have omitted internal quotation marks, alterations, and/or citations throughout this Opinion unless otherwise noted.

to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (holding that for exhaustion, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition").

The parties agree that Tucker has exhausted his state court remedies as to the issues raised in his federal habeas petition.  Specifically, Tucker presented some of his federal claims at trial and during his direct appeal proceedings and then presented other federal claims in his state habeas petition to the Supreme Court of Virginia.

The respondent argues that Tucker's federal Claim 1 (insufficient evidence), Claim 2 (confrontation), and Claim 3 (double jeopardy) are barred from federal habeas review by the doctrine of procedural default.  With the exception of federal habeas Claim 1(d), the Supreme Court of Virginia in the state habeas proceeding found that similar claims in the state petition were procedurally defaulted under *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).  *Slayton* holds that "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction. . . .[If the claim] could have been raised and adjudicated at petitioner's trial and upon his [direct] appeal, [then petitioner] has no standing to attack his final judgment of conviction by habeas corpus," based on that inquiry.  *Id.*

If a state court has explicitly denied a petitioner's habeas claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is also procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). The rule in *Slayton* has been upheld as an independent and adequate state ground for dismissal of a federal habeas claim. *Prieto v. Zook*, 791 F.3d 465, 468–69 (4th Cir. 2015).

The state court did not apply the *Slayton* rule to Tucker's federal habeas Claim 1(d). At trial and on direct appeal, Tucker presented this part of his current Claim 1, asserting that the evidence was insufficient to prove he constructively possessed the shotgun and drugs seized from 1046 Jones Store Lane because it did not prove that he lived there or exercised dominion over the items. The state appellate courts addressed the claim on the merits and found it to be without merit. Resp. Ex. 2, at 64–67, ECF No. 13-2; Resp. Ex. 3 at 53, ECF No. 13-3. When Tucker presented this claim in state habeas proceedings, the Supreme Court of Virginia found the claim procedurally barred from habeas review under *Henry v. Warden*, 576 S.E.2d 495, 496–97 (Va. 2003) (holding that issue addressed and resolved at trial and direct appeal is not cognizable in habeas proceeding). Resp. Ex. 4, at 190, ECF No. 13-4. The exhaustion doctrine under 28 U.S.C. § 2254(b) does not require a federal habeas petitioner to raise the same claim on appeal and again in state habeas proceedings. *O'Sullivan*, 526 U.S. at 844. For this reason, I reject the respondent's procedural

default argument as to Claim 1(d) and will consider this claim on the merits, with reference to the state appellate court findings.

As for Tucker's procedurally barred claims, a federal habeas court can consider such claims only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[7] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Cause for procedural default requires showing the existence of some objective factor, external to the defense and not attributable to the petitioner, that impeded efforts toward compliance with state procedural rules.  *Id.* at 756–57.  To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Tucker contends that trial counsel's ineffective assistance, as alleged in federal habeas Claim 4 in failing to argue the issues raised in Claims 1, 2, and 3 of his federal

---

[7] To prove a fundamental miscarriage of justice to excuse a procedural default, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Tucker has made no such argument in this case.  To state a claim of actual innocence sufficient to excuse procedural default, a petitioner must show "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. *Bousley v.  United States*, 523 U.S. 614, 623 (1998).  Tucker does not offer any new evidence on which the factfinder would likely have found him innocent of the offenses at issue in this case.

petition, constitutes cause for his procedural default of Claims 1, 2, and 3.  Attorney

errors can serve as cause to excuse a procedural default, but only if the attorney's

deficient performance rose to the level of constitutionally ineffective assistance of

counsel under the Sixth Amendment.  *Coleman*, 501 U.S. at 754.  For reasons I will

explain while discussing each of Tucker's claims of ineffective assistance below, I

conclude that he has not demonstrated that any of counsel's challenged actions or

omissions violated his constitutional rights.   Therefore, Tucker's assertions of

ineffective assistance cannot serve as cause to excuse his procedural defaults of

Claims 1, 2, and 3, and Tucker does not argue any other cause.  Accordingly, I will

dismiss Claims 1, 2, and 3 as procedurally barred from federal habeas review, except

for Claim 1(d), arguing that the Commonwealth failed to present sufficient evidence

of constructive possession.

### B.  Habeas Review under § 2254(d).

Federal courts reviewing constitutional claims adjudicated on the merits in

state court may grant relief on such a claim only if the state court's decision was (1)

"contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," or (2) "was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  In the context of federal

habeas review, the question is not whether a federal court would reach the same

decision as the state court or even whether the federal court believes the state court's decision is correct.  A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

> The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system. . . . In other words, a federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification . . . beyond any possibility for fairminded disagreement.

*Mays v. Hines*, 592 U.S. 385, 391 (2021).

### C: Sufficiency of the Evidence.

As stated, on direct appeal and in federal habeas Claim 1(d), Tucker challenged the sufficiency of the evidence on constructive possession of the drugs and the firearm.  The Court of Appeals of Virginia denied relief on these claims in a detailed, eight-page per curiam order.  In denying Tucker's subsequent appeal, the Supreme Court of Virginia did not issue a detailed order or opinion.  Accordingly, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the last reasoned opinion addressing the issue — from the Court of Appeals of Virginia.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

The court of appeals addressed and rejected on the merits Tucker's claim that the evidence was insufficient to prove that he constructively possessed the drugs and firearm found at his residence:

Circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt. Circumstantial evidence is not viewed in isolation. Rather, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.

Possession of contraband may be actual or constructive and requires proof that the defendant was aware of both the presence and the character of the [contraband] and that it was subject to his dominion and control. Such proof may be shown by evidence of acts, statements, or conduct of the accused or other facts or circumstances. Proximity to contraband is not by itself sufficient proof of possession, but it is a factor to be considered. Whether the evidence established possession is largely a factual issue.

The evidence connected [Tucker] to the house where Deputy Bush found the firearm, ammunition, and drugs. Documents with [Tucker's] name were found in the residence including [his] high school diploma, ID card, credit cards, medication prescribed to [him], and checks payable to [him]. Additionally, a significant amount of male clothing was found in the bedroom with these documents.

Moreover, a deputy who participated in the search of the house testified that he recalled [Tucker] living in the house as a juvenile. Furthermore, Deputy Bush testified that Miller told him that [Tucker] lived at the house and had assaulted her there. After [Tucker] was arrested about a mile away, he admitted taking Miller's car without permission because he wanted to get away from her. [Tucker] initially told the magistrate that the house searched was his, and he asked Deputy Bush how the police could search his house if he was not there. While there were indications that [Tucker's] mother and Miller sometimes stayed at the house, possession of contraband may be joint.

Further, Deputy Bush testified that he found scales with cocaine residue in the kitchen. A large amount of cash in the amount of $3,140, $2,120 of which was in twenty-dollar bills, was found in the room with [Tucker's] personal property. Deputy Bush found several baggies with the corners ripped off which, as he testified, is a consistent practice in

the distribution of drugs. Last, Miller told Deputy Bush that [Tucker] put drugs in the gas cap of vehicles, and Deputy Bush found crack cocaine in the Explorer's gas cap. Although proof that contraband was found in premises owned or occupied by the defendant is insufficient, standing alone, to prove constructive possession, it is probative when considered with the other evidence presented.

Finally, [Tucker] made five telephone calls from the jail in June 2017. During the calls he discussed, mostly in veiled language, the possibility of other people claiming possession of the house, drugs, and firearm. Viewing the evidence in the light most favorable to the Commonwealth, the telephone calls established that [Tucker] was aware of the drugs and firearm in the house. During one phone call [Tucker] contacted a friend who stated, "I'm trying to get her to do the affidavit." [Tucker] advised his friend to "tell her I got someone that's going to claim everything for me . . . I just need her to vouch and . . . be like it ain't [mine]." A reasonable interpretation of these statements is that [Tucker] wanted someone to fill out an affidavit stating that the gun and drugs were not his and that [Tucker] was attempting to manufacture evidence to show that the gun and drugs belonged to someone else. Thus, the totality of the evidence proved that [Tucker] knew the drugs and firearm were in the house and that he exercised dominion and control over them.

Where a case is based on circumstantial evidence, as it is here, the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence. Whether a defendant's hypothesis of innocence is reasonable is a question of fact. The trial court rejected [Tucker's] hypothesis that the drugs and firearm found in the house did not belong to him. The fact finder's rejection of a hypothesis of innocence is binding on appeal unless plainly wrong. We find that the Commonwealth's evidence was not inherently incredible and was sufficient to support [Tucker's] drug and firearm convictions.

Resp. Ex. 2, at 64–67, ECF No. 13-2.

In Claim 1(d), Tucker complains about evidence that was *not* before the court

— the prosecution produced no evidence of Tucker's presence at the property, his

handling of the drugs or the firearm, his fingerprints, his DNA, or his ownership of the home, firearm, or drugs.  He also points to the presence of other people's belongings at the residence, such as women's clothing and Miller's wallet and keys, indicating that others lived or stayed there.  Tucker asserts that the drugs and gun did not belong to him; that he did not exercise dominion or control over them; and that Miller was motivated to lie to officers because she was upset with Tucker.

Sufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim. *Jackson v. Virginia*, 443 U.S. 307, 322 (1979).  The evidentiary standard for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  Under § 2254(d),

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, it is the responsibility of the jury — not the [habeas] court — to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  In other words, even when "[r]easonable minds reviewing the record might disagree" about the state courts'

rulings on sufficiency, "on habeas review that does not suffice to supersede" the state courts' rulings under the deference demanded by § 2254(d). *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge, a federal habeas court must find that the state-court conclusion is "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 338 (citing § 2254(d)(2)). In making this determination, the federal court may not "use a set of debatable inferences to set aside the conclusion reached by the state court." *Id.* at 342.

Possession of a firearm or illegal drugs may be actual or constructive. *United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005). In Tucker's case, the prosecutor relied on the theory of constructive possession, which requires evidence proving two issues at trial: (1) whether Tucker knew that the firearm and the drugs were in the house; and (2) whether Tucker had the ability to exercise dominion and control over those items. *United States v. Blue*, 808 F.3d 226, 232 (4th Cir. 2015) (finding that evidence of the defendant's one-time presence at a house that contained a drug stash was not sufficient to prove the defendant's constructive possession of the stash).

The *Blue* case, on which Tucker relies in his responsive brief, ECF No. 25, involves a federal direct appeal, and appellate standards differ from those applicable in habeas proceedings. The appellate test in Virginia in a circumstantial evidence

case is whether the Commonwealth has excluded all reasonable hypotheses of innocence. *Stawderman v. Commonwealth*, 108 S.E.2d 376, 380 (Va. 1959) ("It is not sufficient that facts and circumstances proved be consistent with the guilt of the accused.  To sustain a conviction they must be inconsistent with every reasonable hypothesis of his innocence.")  A federal habeas court, however, does not apply the stricter state standard of review for sufficiency of the evidence since compliance with a state evidentiary rule does not rise to the level of a constitutional claim. *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985) (holding that in § 2254 cases, "*Jackson* mandates application of a federal standard of review for sufficiency of the evidence because the substance of habeas corpus relief is based on federal due process grounds").

Tucker argues that in his case, like the *Blue* case, the Commonwealth did not prove his constructive possession of the firearm or the drugs found at the house.  On the contrary, the case against Tucker included far more than officers finding contraband in a place he had once lived, as in the *Blue* case.  For example, the Commonwealth presented evidence that Tucker had relationships with the others who sometimes stayed at the house, who were women; that one bedroom contained male and female clothing items and the firearm in the closet; that on the day of the search, Tucker claimed the house as his residence and had lived there when younger;

and that he kept highly personal possessions there, such as his diploma, prescription medications, forklift license, and several checks made out to him with recent dates.

Tucker complains of a lack of proof that he owned the house or the vehicle where officers found drugs. He points out that when he was arrested a mile from the house, he did not have drugs or a firearm with him, although Miller had said that he did. He asserts that ownership of the gun was clarified through an affidavit from Melissa Tucker, who said she was holding it for an unspecified friend. Technical ownership of a location or item, however, is not decisive in a constructive possession case, which requires only knowledge of the contraband and ability to exercise control over it. *Blue*, 808 F.3d at 232. Moreover, as discussed by the court of appeals, the prosecution also produced evidence of phone calls Tucker made from jail about having someone else claim possession of the drugs and gun for which he was charged. *Id.* (noting that "[i]n joint occupancy cases, there must be some additional nexus linking the defendant to the contraband").

As the court of appeals discussed, from the totality of the evidence, the trial court could reasonably have inferred that Tucker was aware of the presence and character of the firearm and drugs at the house and in the nearby vehicle and that these items were subject to his dominion and control. He simply has not demonstrated that the rulings of the Virginia appellate courts were contrary to, or involved an unreasonable application of *Jackson* as clearly established federal law

on his sufficiency claims or that the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings.  I will grant the Motion to Dismiss as to Claim 1(d) under § 2254(d).[8]

### D.  Assistance of Counsel.

When reviewing claims that counsel provided ineffective assistance at trial or on appeal, a federal court must apply a highly deferential standard.  A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In the context of an exhausted § 2254 habeas claim, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To establish the element of deficient performance, a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  The reviewing court must not rely upon "the distorting effects of hindsight,"

---

[8]   I will separately address Tucker's claims that counsel provided ineffective assistance at trial on the constructive possession issues and his claim that his procedural default of parts of Claim 1 and Claims 2 and 3 should be excused by his counsel's alleged ineffective assistance.

but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Id.* at 689–90. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish prejudice, a petitioner must show that but for counsel's challenged conduct, there is a "reasonable probability that, . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994); *Strickland*, 466 U.S. at 697. I will apply these deferential standards in reviewing Tucker's ineffective assistance of counsel claims, all of which were rejected by the state habeas court.

### *Failure to Call Melissa Tucker.*

In Claim 4(a), Tucker is aggrieved because counsel did not call any defense witnesses, specifically, his mother, Melissa Tucker (Melissa). The Supreme Court of Virginia rejected this claim under both prongs of the *Strickland* analysis:

> The record, including the trial transcript and Melissa's affidavit, demonstrates counsel spoke with Melissa and informed the court that

"[a]fter having talked to her I don't think I need to call her as a witness." [Tucker] neither explains why this decision was objectively unreasonable nor proffers the substance of counsel's conversation with Melissa. Even assuming Melissa would have testified consistently with the affidavit she now provides and identified the purported owner of the shotgun, [Tucker] cannot show why Melissa's testimony would have been reasonably likely to lead to a different outcome at trial when balanced against the substantial evidence, including the discovery of his documents scattered throughout the house and his own admissions, demonstrating [he] lived in the bedroom where the shotgun was found and had dominion and control over it. Moreover, counsel could have reasonably concluded Melissa's admission that [Tucker] lived at the house would undermine his defense. *See Prieto v. Warden*, 286 Va. 99, 114 (2013) ("Counsel is not ineffective for failing to present evidence that has the potential of being 'double-edged.'"). Further, [Tucker] fails to identify any other witness counsel should have called or proffer what such witnesses would have testified.

Resp. Ex. 4, at 201–02, ECF No. 13-4.

On federal habeas review, I must presume that counsel's decision not to call Melissa as a witness was a reasonable trial strategy, and Tucker has not demonstrated otherwise.[9] *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (holding "the

---

[9] Tucker argues in response to the Motion to Dismiss that I should somehow apply judicial estoppel because the respondent's defenses to this claim in state and federal habeas proceedings differed to some degree. Br. Opp'n 14–15, ECF No. 25. He complains that in response to the state habeas petition, the respondent remarked that defense counsel presented no evidence, but in defense of the federal habeas petition, respondent claimed presenting no evidence was a strategic defense tactic. "[J]udicial estoppel forbids parties from assum[ing] successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory." *Lofton Ridge, LLC v. Norfolk S. Ry.*, 601 S.E.2d 648, 650 (Va. 2004). In the state habeas proceedings, the respondent argued that counsel reasonably could have believe that having Melissa testify would potentially harm, rather than help, Tucker's case, since she had not named another owner of the firearm. In moving to dismiss the federal habeas, the respondent has argued that counsel made a reasonable tactical decision not to call Melissa as a witness, because she would have testified that although she owned the

decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [a reviewing court] must afford enormous deference"). On this record, I cannot find that the state court's ruling on these claims was contrary to *Strickland* or based on an unreasonable determination of facts as required for Tucker to achieve habeas relief under § 2254(d).

### *Kaila Miller.*

In Claim 4(b), Tucker complains that counsel elicited hearsay statements by Miller through a Commonwealth witness, Deputy Bush, allowing additional Miller statements to come into evidence on redirect by the Commonwealth. Pet. 10, ECF No. 1; Resp. Ex. 5, at 222, 228, 234–45, ECF No. 13-5. Tucker also faults counsel for failing to argue that Miller's statements were inadmissible because she did not testify (Claim 1(c), and apparently for not calling Miller as a witness to elicit testimony that she used the drugs found in the house and was claiming they were Tucker's because she felt he had rejected her for another woman (Claim 2(a) (alleging a Confrontation Clause violation).

---

house and the vehicle parked outside, Tucker lived in the house. Resp. 14, ECF No. 13 and Ex. 4, at 67, ECF No. 13-4. The respondent argued that counsel could have considered Melissa's testimony more likely harmful than helpful to the defense. A reviewing court should not second guess counsel's reasonable, strategic decisions for trial. *Strickland*, 466 U.S. at 689–90. And as the respondent's defense regarding Melissa's testimony was not inconsistent in the state and federal habeas proceedings, I find no ground for application of judicial estoppel here.

In addressing these claims, the Supreme Court of Virginia applied the two-part analysis in *Strickland* and found as follows:

> The record, including the trial transcript, demonstrates that trial counsel, not the Commonwealth, elicited Miller's statements that she sometimes stayed at the house, that [Tucker] hit her, and that he stored drugs in the gas cap of his vehicles. [Tucker] does not assert it was objectively unreasonable for trial counsel to elicit these statements, which trial counsel could have reasonably concluded were necessary to demonstrate Miller knew about and had access to the contraband, that the items could have belonged to her, and that she had reason to be angry with [Tucker] and which counsel used to argue these points.

> When the Commonwealth elicited Miller's statements to Deputy Bush that [Tucker] possessed drugs and a gun and that Deputy Bush had concluded [Tucker] lived at the house based on Miller's statements, trial counsel objected, but was overruled. [Tucker] does not allege counsel's objection was deficient, nor does [he] allege counsel erred by "opening the door" to further hearsay. Further, [Tucker] fails to demonstrate the exclusion of these statements would have been reasonably likely to lead to a different outcome at trial, given the substantial evidence — including [Tucker's] own admissions and the discovery of his documents throughout the house — demonstrating [he] lived in the house where the shotgun and drugs were found and that the contraband would have been readily ascertainable to anyone inside the house.

Resp. Ex. 4, at 195–96, ECF No. 13-4. Similarly, the state court found no reasonable probability that exclusion under the Confrontation Clause of any of Miller's statements would have led to a different outcome at trial, since other evidence showed that Tucker lived there with access to the gun and drugs. *Id.* at 196. Thus, the court rejected under *Strickland* the ineffective assistance claims involving admission of Miller's statements through Bush's testimony.

I must presume that counsel's decision about letting in Miller's statements was part of his trial strategy, *Strickland*, 466 U.S. at 689–90, and in this circumstantial evidence case, I cannot find that it was unreasonable.  Counsel would have known through discovery of Miller's statements to law enforcement, that Tucker had assaulted her and stolen her rental car.  Thus, counsel could reasonably have decided that calling Miller as a witness so Tucker could confront her was more risky than potentially helpful to the defense.  *Terry*, 366 F.3d at 317.  But by eliciting Miller's statements through testimony from Deputy Bush, information helpful to the defense came before the court — that Miller stayed at the house, that she had clothes and other personal items there, that she was upset with Tucker, and that she claimed Tucker had drugs, a gun, and a knife with him in the rental car.  Officers found no drugs or gun when they arrested Tucker, thus undermining Miller's credibility.  Counsel's strategy did allow admission of other, less favorable Miller statements — that Tucker had drugs and a gun in the house and that he often hid drugs near vehicle gas caps.  Yet, as a whole, Miller's statements showed that she knew about and had access to the contraband, which provided support for the defense argument that she had motive and opportunity to set Tucker up for charges of possession of the drugs and the gun.  Thus, I cannot find that the state court's ruling on these claims was contrary to *Strickland* or based on an unreasonable determination of facts as required for Tucker to achieve habeas relief under § 2254(d).

*The Forensic Analyst.*

In federal habeas Claims 1(b), 2(b) and 4(c), Tucker challenges counsel's decision to not require the analyst to testify was ineffective assistance on sufficiency and confrontation grounds.  The Supreme Court of Virginia rejected these claims in the state habeas proceeding as a strategic choice counsel made:

> [P]rior to trial, the Commonwealth provided [Tucker] with a certificate of analysis attesting to the results of forensic testing performed on items seized from the house by Jacob Easter, a forensic scientist.  According to that certificate, several items, including pills, plastic bags containing white powder and residue, a digital scale, residue found on straws, and pink residue found on a spoon, tested positive for cocaine, alprazolam, and oxycodone.  The Commonwealth notified the defense in writing, pursuant to Code §§ 19.2-187 and -187.1, that it intended to offer this certificate into evidence without calling Easter as a witness and that [Tucker] had a right to object, within fourteen days, to the admission of the certificate without Easter's testimony.  Counsel chose not to object.  At trial, the court admitted this certificate as Commonwealth Exhibit No. 9, also without objection.
>
> Counsel could have reasonably determined any objection at trial to the admissibility of the certificate without Easter's testimony and to [Special Agent George's] testimony regarding its contents would be unsuccessful, as counsel had waived any such objection.  Moreover, [Tucker] alleges no facts demonstrating his defense would have been aided had trial counsel demanded Easter testify in person regarding the certificate.  Thus, [Tucker] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Resp. Ex. 4, at 198, ECF No. 13-4.

I must agree.  Even now, Tucker does not offer any information that counsel could have used in questioning the analyst to raise reasonable doubt about the

validity of the test results at issue.  Without such information, I cannot find that counsel's failure to insist on requiring testimony from the analyst was either deficient performance or prejudicial to Tucker's defense.  Thus, I cannot find that the state court's ruling on these claims was contrary to *Strickland* or based on an unreasonable determination of facts as required for Tucker to achieve habeas relief under § 2254(d).

### Tucker's Phone Calls from Jail.

In federal habeas Claim 2(c), Tucker complains that admission of jail phone call recordings violated his rights under the Confrontation Clause, and in Claim 4(c), he faults counsel for not making this objection.  The state habeas court rejected these claims:

> Insofar as [Tucker] asserts counsel should have challenged the admission of his own statements [on the phone call recordings] on the ground of the Confrontation Clause, the admission of a defendant's own statement does not violate the Confrontation Clause.  *See United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (noting a party cannot claim his own statement should be excluded under the Confrontation Clause). [Tucker] does not allege counsel should have objected to the statements of the other parties to these phone calls.
>
> Insofar as [Tucker] argues counsel should have objected to Special Agent George's authentication because he was not a custodian of the institution from which the calls were retrieved, trial and appellate counsel could have reasonably concluded any such objection would have been futile and that Special Agent George could authenticate the calls by testifying he was familiar with [Tucker's] voice and identifying [Tucker] as one of the speakers.

Resp. Ex. 4, at 199, ECF No. 13-4.  Thus, the state habeas court rejected the phone call claims under both prongs of *Strickland*.

Specifically, counsel agreed to stipulate that Darryl Kelly, the custodian of the phone call recordings, would testify that the recordings were made and kept in the ordinary course of business and that the dates and times were accurate.  *Id.* at Ex. 5, at 355, ECF No. 13-5.  The Commonwealth agreed to present only a limited number of recordings as evidence against Tucker.  *Id.* at 361.  Tucker's attorney continued to oppose admissibility, arguing that the content of the calls was incomprehensible and not relevant.  *Id.* at 359–64.  The trial court overruled the objection, finding that if the Commonwealth could offer evidence that statements in the calls were made by Tucker, the calls would be relevant and admissible.  *Id.* at 364.

Under Virginia precedent, a party may authenticate a voice recording through testimony from someone familiar with the speaker's voice.  *Snead v. Commonwealth*, 358 S.E.2d 750, 752 (Va. 1987) (citing *Opanowich v. Commonwealth*, 83 S.E.2d 432, 438 (Va. 1954).  The Commonwealth questioned witness Special Agent George to authenticate the jail phone calls, and Tucker's counsel asked George about how he became familiar with Tucker's voice.  *Id.* at 365–67.  Thus, counsel challenged the evidence as best he could, but the court determined that the calls the prosecution presented were admissible.

Tucker fails to provide additional information that counsel could have used to undermine the reliability of the recordings or George's testimony about Tucker's voice on the calls.  Nor does Tucker suggest how testimony from the third-party recipients of those phone calls would have helped his defense.  As such, Tucker has not demonstrated that the state court's decision on this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of facts. Therefore, I will grant the Motion to Dismiss as to his federal habeas claims about the jail telephone calls.

### *Double Jeopardy.*

In federal habeas Claim 4(d), Tucker asserts that counsel was ineffective for failing to make the double jeopardy argument that Tucker raised in Claim 3 of his federal petition.  The Supreme Court of Virginia on habeas found no merit to this claim under *Strickland*:

> The *Blockburger* test is a "rule of statutory construction" applied in the Double Jeopardy context that "asks whether each statutory offense requires proof of a fact that the other does not." *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).  Before applying the *Blockburger* test, courts "first consider whether the legislative intent [to punish the same offense under two different statutes] is clear from the face of the statute or the legislative history, and if so, then the *Blockburger* rule is not controlling." *Id.* at 298-99.  "Where a legislature specifically authorizes cumulative punishment under two statutes . . . a court's task of statutory construction is at an end." *Id.* at 299.
>
> The record, including the trial transcript and [Tucker's] indictments, demonstrates he was charged with possession of cocaine

> with intent to distribute, third or subsequent offense, a violation of
> § 18.2-248(C), and possession of a firearm while possessing cocaine
> with intent to distribute, a violation of § 18.2-308.4(C).  The latter
> statute provides that "[a] violation of this subsection . . . constitutes a
> separate and distinct felony."  Trial and appellate counsel could have
> reasonably concluded this provision demonstrates an express
> authorization by the legislature to impose punishments under both Code
> §§ 18.2-248(C) and -308.4(C).

Resp. Ex. 4, at 200, ECF No. 13-4.  Thus, the state habeas court ruled Tucker had

not demonstrated that counsel's failure to argue double jeopardy was deficient

performance or shown a reasonable probability that such an argument would have

led to a different outcome at trial.

In the federal petition and Tucker's response to it, he offers no contradiction

of these findings.  Moreover, it is well established that counsel is not ineffective for

failing to make a meritless argument.  *Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir.

1987) (holding counsel is not ineffective for failing to raise objection or make

motion for which there is "no obvious basis").  I cannot find that the state court's

ruling on Tucker's double jeopardy claim was contrary to *Strickland* or based on an

unreasonable determination of facts as required for Tucker to achieve habeas relief

under § 2254(d).  Therefore, I will grant the Motion to Dismiss as to Tucker's federal

habeas claim of double jeopardy.

### *Failure to Require Witnesses to be Sworn.*

In Claim 1(a), regarding sufficiency of the evidence, Tucker complains that

the court did not place Commonwealth's witnesses under oath before allowing their

testimony at trial, and in Claim 4(e), he faults counsel for not raising this argument at trial.   The Supreme Court of Virginia expressly found that the record "demonstrates every witness testified under oath."  Resp. Ex. 4, at 190, ECF No. 13-4.  The court then found that Tucker's ineffective assistance claim on this issue failed under both facets of the *Strickland* standard.

The transcript in the record expressly notes that the witness was placed under oath before testifying.  Resp. Ex. 5, at 113 (Bush), 263 (Yeatts), 271 (Martin), 289 (Travis), and 322 (George), ECF No. 13-5.  Thus, I cannot find that the state court's ruling on Tucker's claim about witnesses not being sworn was contrary to *Strickland* or based on an unreasonable determination of facts as required for Tucker to achieve habeas relief under § 2254(d).  Therefore, I will grant the Motion to Dismiss as to Tucker's federal habeas claims about unsworn witnesses.

**Failure to Argue Insufficient Evidence of Constructive Possession.**

In federal habeas Claim 4(e), Tucker argues that counsel failed to contend that the evidence was not sufficient to prove his constructive possession of the gun and drugs found at the house the officers searched.  The Supreme Court of Virginia rejected this claim in state habeas proceedings.  After summarizing the trial evidence at length, the court found:

> Trial counsel moved to strike [Tucker's] charges, arguing the Commonwealth had not proven [Tucker] constructively possessed the shotgun and drugs.  Trial counsel explained that [Tucker] was not found at the address, the disorderly state of the house suggested no one lived

there, other people's possessions had also been found inside the house, and petitioner's North Carolina driver's license suggested he did not live there. Trial counsel expressly argued the court should "make a distinction between the fact of him residing there" and the question whether the Commonwealth had "sufficiently proven that he had any knowledge of any of the things that were ultimately in that house, let alone what was out in the car." Noting Miller had set in motion the events leading to the search of the house, counsel argued Miller also lived at the house and was upset with [Tucker] because she and [Tucker] had been fighting. After conferring with [Tucker], counsel further argued the Commonwealth had failed to prove he was present in the home, that he was ever in close proximity to the drugs when they were in the home, or that he "had some knowledge of what was, in fact, there." The trial court overruled the motion. In closing argument, trial counsel re-incorporated his motion to strike without offering additional argument.

      Accordingly, trial counsel made the argument [Tucker] asserts he should have made.

Resp. Ex. 4, at 192–93, ECF No. 13-4. The court also noted that other evidence, including Tucker's own admissions and personal property items discovered in the house demonstrated that he lived there and that the shotgun and drugs were accessible to him. *Id.* at 195.

    As discussed, on direct appeal, the state courts held that the evidence was sufficient to prove that Tucker constructively possessed the firearm and drugs seized from the house. In habeas proceedings, the Supreme Court of Virginia found that counsel's efforts to press arguments of insufficient evidence in various ways were not professionally deficient, and Tucker did not show a reasonable probability that but for counsel's strategic choices, the outcome at trial would have been different.

Applying the deferential standard in § 2254(d), I cannot find that the state court's rulings on this issue were contrary to, or involved an unreasonable application of *Strickland* or were based on an unreasonable determination of the facts. I will grant the Motion to Dismiss as to Claim 4(e).

### III. CONCLUSION.

For the stated reasons, I will grant the respondent's Motion to Dismiss.

A separate Final Order will be entered herewith. I decline to issue a certificate of appealability because Tucker has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

DATED:  September 19, 2024

/s/  JAMES P. JONES
Senior United States District Judge